UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LORI C. GILBERT,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES AIR FORCE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 21-0318 (CJN) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.     DEFENDANT'S SEARCHES WERE CONSISTENT WITH FOIA. ............................ 2

     A.    Plaintiff's Allegations of "Positive Indications of Overlooked Material"
          Are Unfounded.............................................................................. 3

     B.    Defendant's Search Terms Were Adequate. ............................................. 5

     C.    Defendant Adequately Described Its Searches. ......................................... 7

     D.    The Inspector General's Office's Search Was Consistent with FOIA. ................... 9

II.    DEFENDANT'S WITHHOLDINGS WERE CONSISTENT WITH FOIA. ................ 10

     A.    Defendant Properly Relied on Exemption 6 to Withhold Workplace Survey
          Comments Provided by Employees Based on Promise of Confidentiality............. 11

     B.    Defendant Properly Relied on Exemption 3 and the Inspector General Act to
          Withhold in Full Documents That, If Disclosed in Redacted Form, Would
          Reveal the Identity of Complainants....................................................... 16

CONCLUSION........................................................................................................ .. 18

# TABLE OF AUTHORITES

**Cases**                                                                                    **Page(s)**

*Bigwood v. U.S. Dep't of Def.*,
   132 F. Supp. 3d 124 (D.D.C. 2015) ................................................................ 6-7, 8

*Cable News Network v. FBI*,
   293 F. Supp. 3d 59 (D.D.C. 2018) ...................................................................... 8

*Cuban v. SEC*,
   744 F. Supp. 2d 60 (D.D.C. 2010),
   *reconsideration granted on other grounds*, 795 F. Supp. 2d 43 (D.D.C. 2011) .............. 13-14

*DiBacco v. U.S. Army*,
   795 F.3d 178 (D.C. Cir. 2015) ........................................................................ 3-4

*Flete-Garcia v. U.S. Marshals Serv.*,
   Civ. A. No. 18-2442 (RDM), 2021 WL 1148796 (D.D.C. Mar. 24, 2021) ........................... 6

*Hodge v. FBI*,
   703 F.3d 575 (D.C. Cir. 2013) ...........................................................................4

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
   284 F. Supp. 2d 15 (D.D.C. 2003) ..................................................................... 13

*Iturralde v. Comptroller of the Currency*,
   315 F.3d 311 (D.C. Cir. 2003) .......................................................................... 8

*Judicial Watch, Inc. v. Dep't of State*,
   177 F. Supp. 3d 450 (D.D.C. 2016) ..................................................................... 8

*Liberation Newspaper v. U.S. Dep't of State*,
   80 F. Supp. 3d 137 (D.D.C. 2015) ...................................................................... 7

*Machado Amadis v. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2017) .......................................................................... 3

*Oglesby v. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ........................................................................... 3

*Texas v. United States*,
   798 F.3d 1108 (D.C. Cir. 2015) ....................................................................... 13

*Valencia-Luna v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ......................................................................... 3

*Wash. All. of Tech. Workers v. Dep't of Homeland Sec.*,
   892 F.3d 332 (D.C. Cir. 2018) ........................................................................ 13

**Statutes**

5 U.S.C. App'x 3 § 2 ................................................................................................. 16

5 U.S.C. App'x 3 § 7 ................................................................................................. 16

**Other Authorities**

Air Force Commander Directed Investigation (CDI) Guide ....................................... 15

Air Force Instruction 90-301 ............................................................................. 9-10, 17

Defendant United States Air Force respectfully submits this Opposition to Plaintiff's

Cross-Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary

Judgment.

## INTRODUCTION

Defendant's motion established that the agency conducted multiple searches that were

reasonably calculated to identify records responsive to Plaintiff's 17-part FOIA request for

records relating to a Commander Directed Investigation of a hostile work environment in her

unit.  Defendant produced the non-exempt portions of more than 1,900 pages and withheld

exempt information under FOIA Exemptions 3, 5, and 6.  Defendant established that its searches

were adequate to uncover responsive records and that its withholdings were consistent with

FOIA and relevant case law.

In response, Plaintiff has challenged discrete aspects of Defendant's searches, but most of

these arguments are based on erroneous facts or speculative arguments.  The agency's search

terms were appropriate because, contrary to Plaintiff's assumption, the searches for "Major Lori

Gilbert" and "Lori Gilbert" identified documents with any of those words individually, not all of

them together in a string.  Plaintiff's remaining complaints about the searches are meritless.

In challenging Defendant's Exemption 6 withholdings, Plaintiff unfairly minimizes the

relevant privacy interests by ignoring the critical fact that the Defense Department employees

who submitted their opinions about their supervisors and the work environment had been

promised that their comments would remain confidential.  In an unconvincing effort to outweigh

these substantial privacy interests, Plaintiff contends that there is a "compelling public interest"

in the disclosure of the comments.  But the comments reveal no meaningful information about

how Defendant is discharging its mission, and even if there were a minimal public interest in

disclosing the employees' opinions, it does not outweigh the relevant privacy interests. Ordering Defendant to disclose these comments could potentially undermine the military's efforts to obtain honest opinions from employees about their supervisors, their workplace environment, and the prospects to succeed in their careers.

Finally, Plaintiff incorrectly argues that Defendant's Exemption 3 withholdings are overbroad because, once again, she fails to acknowledge that disclosing the records (even with redactions of the complainants' personal data) would identify the complainants. Plaintiff's argument on this point also is fundamentally flawed because it is based on the incorrect premise that the Inspector General's Office investigated Plaintiff and/or the workplace issues in her unit. The only investigation was performed by the unit commander, and Plaintiff's reliance on provisions in a manual regarding Inspector General investigations is therefore misplaced.

For the reasons set forth herein and in Defendant's opening brief, the Court should grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

## ARGUMENT

## I.    DEFENDANT'S SEARCHES WERE CONSISTENT WITH FOIA.

Plaintiff raises four issues to support her argument that Defendant's search for responsive records was inadequate. Plaintiff contends that (1) Defendant failed to produce documents referenced in the record as "email traffic from September 2018"; (2) the search terms used to identify responsive emails were not designed to capture communications concerning Plaintiff; (3) the agency's description of its searches was inconsistent with FOIA; and (4) the Inspector General's Office's search was insufficient. For the following reasons, these arguments lack merit.

2

A.     **Plaintiff's Allegations of "Positive Indications of Overlooked Material" Are Unfounded.**

Plaintiff's first argument is that she has identified "positive indications of overlooked materials" in connection with Defendant's search.  Opp.[1] at 6.  Plaintiff correctly points out that the Report of Investigation refers to "email traffic from September 2018" that reportedly outlined concerns regarding Plaintiff's leadership.  Pl.'s Decl.[2] Ex. 3 (at page 12).  Plaintiff asserts that Defendant did not produce any such emails.  *Id.* ¶ 7.  Plaintiff argues that, based on this apparent discrepancy, she does not have "the burden to divine the potential reasons for the agency's failure to locate that material."  Opp. at 6-7 (citing *Valencia-Luna v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

Plaintiff is incorrect to suggest that, simply by identifying a reference to "email traffic in September 2018" that she believes was not produced, she has somehow satisfied her burden on summary judgment.  The Circuit's law on this issue is clear: An agency may satisfy its burden to demonstrate that it conducted a reasonable search by submitting "a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'"  *Machado Amadis v. Dep't of State*, 971 F.3d 364, 368 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  The burden then shifts to the requester to overcome this presumption of good faith by "rais[ing] substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials" that the search was adequate.  *DiBacco v. U.S.*

---

[1]     Citations to "Opp." refer to the Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, filed December 19, 2021.  ECF No. 14.

[2]     Citations to "Pl.'s Decl." refer to the Declaration of Major Lori C. Gilbert, dated December 18, 2021.  ECF No. 14-2.

*Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (internal quotation marks and citation omitted); *see also Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (upholding agency's search as adequate when requester "ha[d] not presented sufficient evidence to rebut [the] presumption" of good faith).

In this case, the Declaration of Teresa S. Gonzalez provided a reasonably detailed description of the agency's response to Plaintiff's FOIA request.   The declaration identified the relevant search terms, described the locations searched, and averred that all files likely to contain responsive documents were searched.  *See generally* Gonzalez Decl.[3]  Plaintiff has pointed to references to "email traffic from September 2018" that "outline concerns with [Plaintiff's] leadership."  However, she argues that Defendant did not produce any such emails and suggests that this indicates that Defendants' search was deficient.

On this point, Plaintiff is incorrect that Defendant's searches did not uncover all relevant materials.  Defendant identified several email communications from September 2018 that reference Plaintiff and her leadership.  Supp. Gonzalez Decl.[4] ¶ 10.  These materials were withheld in full pursuant to Exemption 3 and the Inspector General's Act.  *See* Def.'s Mem.[5] at 10-14; Gonzalez Decl. Ex. 1.  Unfortunately, it was not apparent from the descriptions of the records in the *Vaughn* Index that emails from September 2018 had been identified and withheld. A corrected index is submitted with Ms. Gonzalez' supplemental declaration.  *See* Supp. Gonzalez. Decl. Ex. B.

---

[3]      Citations to "Gonzalez Decl." refer to the Declaration of Teresa S. Gonzalez, dated November 19, 2021.  ECF No. 12-2.

[4]      Citations to "Supp. Gonzalez Decl." refer to the Supplemental Declaration of Teresa S. Gonzalez, dated January 21, 2022, submitted herewith.

[5]      Citations to "Def.'s Mem." refer to the Memorandum in Support of Defendant's Motion for Summary Judgment, filed November 19, 2021.  ECF No. 12-1.

Accordingly, Plaintiff's allegation that Defendant's searches did not identify certain emails from September 2018 is inaccurate. These records were not "overlooked." Plaintiff's argument, therefore, does not raise any doubt, let alone a substantial doubt, concerning the adequacy of Defendant's search for records responsive to Plaintiff's FOIA requests.

**B.    Defendant's Search Terms Were Adequate.**

Plaintiff next argues that the search terms that Defendant used to identify responsive emails was inadequate. Specifically, she argues that by using the terms "Major Lori Gilbert" and "Lori Gilbert," it is "quite likely" that the agency did not capture certain emails that referred to her as "Maj Gilbert," "Major Gilbert," "Lori," "the DO," or "625 ACOMS/DO." Pl.'s Decl. ¶ 8; Opp. at 6-7.

Plaintiff's argument is puzzling because it suggests that the only emails Defendant produced contained the phrases "Major Lori Gilbert" and "Lori Gilbert" and that no emails including the phrases "Maj Gilbert," "Major Gilbert," "Lori," etc., were identified and released. But that is not the case. In fact, a review of the email communications produced to Plaintiff demonstrates that relatively few (if any) emails contained the phrases "Major Lori Gilbert" and "Lori Gilbert." Tellingly, Plaintiff has not provided any examples of communications to illustrate her concerns in this regard.

Instead, numerous emails produced by Defendant refer to Plaintiff in multiple other ways, including "Maj Gilbert," as Plaintiff suggests would be most common. *See* Supp. Gonzalez Decl. Ex. A (providing a representative sample of emails produced to Plaintiff that do not contain the phrases "Major Lori Gilbert" or "Lori Gilbert"). Indeed, Defendant produced documents that did not even mention Plaintiff's name but referred to the Commander Directed

Investigation.  *Id.*  Plaintiff's argument that Defendant's missed a significant number of relevant documents because it used the wrong search terms is not consistent with the record.

Plaintiff apparently misunderstands how Outlook's search function works.  A search that includes the terms "Major Lori Gilbert," for example, does not capture only the documents that have all three words in the same order.  Rather, such a search would identify any record that contains any of those terms:  either "Major," "Lori," or "Gilbert."  Supp. Gonzalez Decl. ¶ 6. Thus, the searches conducted by Ms. Costey, Chief Master Sergeant Denny, Mr. Willhite, Lieutenant Gomez, and Captain Shockley and the searches performed by Ms. Gonzalez of the email files of Ms. Costey, Colonel Cote, Captain Mosby, Mr. Kees, Mr. Hayes, Mr. Barron, and Major Detiege, Gonzalez Decl. ¶¶ 34-36, 38, 40, 48-55, were designed to identify any document mentioning the words "Lori" or "Gilbert" and thus would have included communications with the terms "Maj Gilbert," "Major Gilbert," or "Lori," as Plaintiff asserts she would be likely to be referenced.[6]  And with respect to the email files reviewed by Ms. Gonzalez, she manually opened and read each document to determine whether it was responsive to Plaintiff's request.

Based on this explanation, Plaintiff's suggestion that Defendant's search was somehow too limited is unfounded, and her attempt to compare this case to one in which agency misspelled the requestor's name is off the mark.  Opp. at 6 (citing *Flete-Garcia v. U.S. Marshals Serv.*, Civ. A. No. 18-2442 (RDM), 2021 WL 1148796, at *6 (D.D.C. Mar. 24, 2021)).  To the contrary, Defendant's searches were appropriately designed to identify responsive records because they were "reasonably tailored to uncover documents responsive to the FOIA request."  *Bigwood v.*

---

[6]    Plaintiff also suggested that Defendant's search was deficient because it did not search for the phrase "DO," an abbreviation for Director of Operations.  Outlook's search function, however, is not case-sensitive, so the phrase "DO" would identify any email that included the word "do."  Supp. Gonzalez Decl. ¶ 9.  Such a broad search term is unlikely to identify emails "concerning" Plaintiff and the agency's decision not to use this search term was reasonable.

*Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015).  Where, as here, the agency employs

reasonable search terms, the agency's choice of terms is entitled to deference.  *Liberation*

*Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146-47 (D.D.C. 2015) ("Where the agency's

search terms are reasonable, the Court will not second guess the agency regarding whether other

search terms might have been superior.").

    For these reasons, the Court should reject Plaintiff's inaccurate theory and conclude that

Defendant's use of search terms to identify responsive email communications was reasonable.

### C.    Defendant Adequately Described Its Searches.

    Plaintiff also contends that Ms. Gonzalez' declaration was inadequate because it did not

disclose the number of records that resulted in certain searches and did not contain descriptions

of recordkeeping policies or procedures.  Opp. at 8-10.  These arguments are meritless.

    Plaintiff argues that the declaration is "lacking" because it reported the number of

responsive records with respect to some search efforts, but not others.  Plaintiff is correct.  To be

as transparent as possible regarding its multiple searches, Defendant revealed the number of

records that resulted from searches performed by each Air Force office.  *See* Gonzalez Decl.

¶¶ 42-47 (identifying how many records resulted from the searches by the 16 AF Judge

Advocate's Office, the 616th Air Communications Squadron, Communications Directorate, Air

Force Special Operations Command, 502nd Air Base Wing Equal Opportunity & Alternative

Dispute Resolution Office, and Headquarters Air Combat Command/Inspector General).

Defendant was not required to reveal this information, as the number of records resulting from a

search does not necessarily speak to the adequacy of the search.  Indeed, "[t]he adequacy of a

FOIA search is generally determined by the appropriateness of the methods used to carry out the

search, and not by the actual search results." *Bigwood*, 132 F. Supp. 3d at 135 (citing *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

Defendant had a substantial justification for declining to reveal the results from the searches of individuals' email accounts. Plaintiff specifically requested "all emails and any correspondence" involving 11 individuals "concerning" Plaintiff. Disclosing the number of emails that were identified in each separate search of an individual's Outlook account would tend to reveal who may have complained about Plaintiff. This information would significantly undermine Defendant's obligation to protect the privacy of the individual(s) who complained about Plaintiff workplace conduct. *See, e.g.*, Gonzalez Decl. ¶¶ 68-69 (noting that documents submitted to the Inspector General's Office state that the identity of the complainant is to be protected from disclosure). Courts in this Circuit have held that an agency is not required to identify the number of records that it located, particularly when doing so "would reveal precisely the information that the agency seeks to withhold." *Cable News Network v. FBI*, 293 F. Supp. 3d 59, 68-69 (D.D.C. 2018); *see also Jud. Watch, Inc v. Dep't of State*, 177 F. Supp. 3d 450, 458 (D.D.C. 2016) (rejecting the plaintiff's argument that the agency declaration was deficient because it did not indicate how many "hits" resulted from the search of records). Notably, Plaintiff has not cited any legal authority that supports her position that FOIA requires the disclosure of such information. The Court should therefore reject Plaintiff's argument.

Plaintiff also misses the mark by arguing that Defendant's searches were inadequate because its declaration did not address "email archives" or "backup tapes." Opp. at 9-10. Defendant agrees that this topic is not addressed in Ms. Gonzalez' declaration, but that is because there was no reason to do so, as Defendant had access to all responsive records. It is true that Mr. Hayes was asked to conduct a search of his emails for responsive documents but

could not do so because he had transferred to a different unit and no longer had access to his previous computer.  Gonzalez Decl. ¶ 33.  However, the 616th Operations Center's Senior Duty Officer retrieved Mr. Hayes' Outlook files, which Ms. Gonzalez reviewed document-by-document.  Gonzalez Decl. ¶ 53; Supp. Gonzalez Decl. ¶ 6.  Similarly, Colonel Cote, Major Detiege, and Master Sergeant Kees were unable to personally search their Outlook files, but the 616 Operations Center collected their Outlook communications for the relevant period, and Ms. Gonzelez' subsequently reviewed every page.  Gonzalez Decl. ¶¶ 50 52, 55; Supp. Gonzalez Decl. ¶¶ 5-6.  Defendant is unaware of any responsive records that were inaccessible or that might be found in archival systems or "back up tapes."  Supp. Gonzalez Decl. ¶ 11.

There is no basis for Plaintiff's generalized concern that Defendant has not sufficiently described its email search.  Ms. Gonzalez initial declaration stated that email searches were conducted of each individual's Outlook files.  Along with this filing, Ms. Gonzalez has submitted a supplemental declaration confirming that she manually reviewed all Outlook records that were not reviewed by individual account owners.  Plaintiff's vague allegations are insufficient to cast substantial doubt on Defendant's searches, and there is no basis to deny the agency's motion on this ground.

### D.    The Inspector General's Office's Search Was Consistent with FOIA.

Plaintiff next complains that the records identified by the Inspector General's Office appear to be fewer than those specified by Air Force Instruction ("Instruction") 90-301.[7]  Opp. at 10-13.  Plaintiff accurately reports that the Instruction provides that the Inspector General's Office's investigative case file should include certain categories of records, such as an

---

[7]    The instruction is found at https://static.e-publishing.af.mil/production/1/saf_ig/publication/afi90-301/afi90-301.pdf (accessed Jan. 21, 2022).

administrative file (including a notification letter), a report of investigation, and support documents.  Plaintiff complains that the Inspector General's Office did not account for any of these materials, and so its search must have been deficient.  *Id.* at 12.

Plaintiff's argument is misplaced.  The requirement in Instruction 90-301 to maintain certain documents in a case file applies only when the Inspector General's Office initiates an investigation.  *See* Instruction 90-301 § 4.1 ("This chapter instructs IGs at every organizational level how to manage and conduct IG investigations and discusses the investigation lifecycle from complaint analysis through resolution.).  As was made clear in Defendant's motion, a Commander Directed Investigation was conducted with respect to the allegations regarding Plaintiff.  Instruction 90-301 makes clear that commanders and Inspector General officials are to determine whether it is more appropriate to conduct a Commander Directed Investigation or an Inspector General Investigation, *see* Instruction 90-301 § 1.43.1.1.  The Inspector General's Office did not investigate Plaintiff or the hostile work environment issues regarding her unit.  Supp. Gonzalez Decl. ¶ 13.

In this case, the Inspector General's Office conducted adequate searches and identified responsive documents, which were withheld in full.  The materials referenced in Section 4.22 of Instruction 90-301 were not located (because they do not exist) and thus were neither produced nor identified in the Defendant's *Vaughn* Index.  Accordingly, there is no basis to question the adequacy of the agency's search based on Section 4.22.  For the same reason, there is no merit to Plaintiff's allegation that the reference to record categories in Instruction 90-301 constitutes "positive indications of overlooked materials."  Opp. at 13.

## II.    DEFENDANT'S WITHHOLDINGS WERE CONSISTENT WITH FOIA.

Plaintiff challenges Defendant's reliance on Exemption 6 to withhold comments provided by unit members in connection with the 2018 and 2019 Defense Organizational Climate Survey

Reports.  Plaintiff also argues that Defendant improperly relied on Exemption 3 to withhold in full documents that, she alleges, could have been produced while redacting only the name of the complainant.[8]  Both arguments are meritless.

    **A.**    **Defendant Properly Relied on Exemption 6 to Withhold Workplace Survey Comments Provided by Employees Based on a Promise of Confidentiality.**

Defendant's motion established that the agency properly withheld, pursuant to Exemption 6, the unedited responses submitted by Defense Department employees to a survey requesting their opinions about various workplace issues, including the approachability of the first-line supervisor.  Def.'s Mem. at 20-21.  These employees provided their opinions based on the agency's promise that the comments would be kept confidential.  Disclosing these comments, some of which were critical of supervisory officials, could give rise to reprisal, humiliation, ridicule, or other adverse consequences.[9]  *Id.*  Defendant argued that there was no public interest in the disclosure of such records that could outweigh these substantial privacy interests.

In response, Plaintiff has disclosed the unredacted version of the 2018 Defense Organizational Climate Survey Reports that she received from her supervisor to argue that the agency has "grossly misstat[ed] the purported privacy interests surrounding the withheld information."  Opp. at 14.  Plaintiff further argues that Defendant's redaction of the employee comments was inconsistent with how the agency redacted a witness statement in the Report of Investigation.  *Id.* at 13-14 (citing Pl.'s Decl. Ex. 4).  Finally, Plaintiff contends that there is a

---

[8]    Plaintiff does not contest Defendant's Exemption 5 withholdings.  Opp. at 1.  Defendant is entitled to summary judgment regarding its withholding of the Legal Sufficiency Review under Exemption 5 and the attorney-client and deliberative process privileges.

[9]    On this point, an exhibit submitted by Plaintiff confirms that the employees in the organization were concerned about retribution from the Director of Operations (a reference to Plaintiff).  ECF No. 14-7 at 8 ("Does a culture of fear and retribution exist in the 625 ACOMS today?  If so, why? . . . .  DO→Yes.  Multiple folks are worried about retribution.").

"compelling public interest" in the disclosure of information regarding inquiries into the conduct of an agency's workforce. *Id.* at 14. None of these arguments has merit.

*First*, Defendant strongly disagrees with Plaintiff's assertion that the agency misstated any facts regarding these reports or its withholdings. *See* Gonzalez Decl. ¶¶ 75-77. These comments were provided to the officials conducting the survey based on a promise that their responses would remain confidential. *Id.* ¶ 75. Indeed, many of the comments contain details or other information that are likely to reveal the commenter's identity. *See* Pl.'s Decl. Ex. 4 at 31-56. Even a comment that might not contain direct criticism of a superior could allow a person with knowledge of the unit (such as Plaintiff), through process of elimination, to further identify the author of another more critical comment. Moreover, there could be indications in a commenter's writing style or choice of words that could indicate his or her identity. Consistent with the Air Force's commitment to the commenters that their personal opinions about workplace matters would remain confidential, the agency redacted the comments in their entirety. Supp. Gonzalez Decl. Exhibit 3 (2015 Department of Defense Memorandum explaining the purpose of climate survey reports and setting forth the agency's policy concerning the withholding of personal comments in response to FOIA requests and describing the harm that would result from the release of such comments). While Plaintiff may disagree with Defendants' arguments concerning the privacy interests involved, there is no basis to conclude that Defendant "grossly misstated" or otherwise misrepresented the facts regarding these withholdings.

*Second*, Plaintiff has ignored the critical fact that the Defense Department employees provided the information under a pledge that their responses would remain confidential. Information provided in this context gives rise to an enhanced privacy interest, as the agency established in its motion. Def.'s Br. at 21 (citing cases). Because Plaintiff has failed to address

(let alone rebut) these cases or even acknowledge this important fact, the Court should deem Plaintiff's argument to be conceded. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003); *see also Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) ("[Local Rule 7(b)] is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."); *Wash. All. of Tech. Workers v. Dep't of Homeland Sec.*, 892 F.3d 332, 348 n.5 (D.C. Cir. 2018) (observing that binding precedent establishes that Local Rule 7(b) is properly applied "in the context of a 12(b)(6) motion to dismiss").

*Third*, Plaintiff unpersuasively argues that there is a "compelling" public interest in information that sheds light on an agency's "inquiries into the conduct of its workforce." Opp. at 14. On this point, Plaintiff relies exclusively on *Cuban v. SEC*, 744 F. Supp. 2d 60, 84 (D.D.C. 2010). That case is not relevant to the instant case. In *Cuban*, the agency invoked Exemption 6 to withhold records relating to an internal investigation of an employee and addressing potential discipline of the employee. *Id.* at 82-83. The Court held that "the public has some interest in knowing whether the defendant will take action if one of its employees . . . is utilizing his position to purportedly further private interests or harass private citizens." *Id.* at 84. The Court found that the agency declarations were insufficient because they merely "speculate[d]" that the disclosure of the information could amount to an invasion of privacy of the individuals involved. *Id.* at 85. The Court thus held that the redacted records must be disclosed, *id.*, a holding that it

reaffirmed on reconsideration, *Cuban v. SEC*, 795 F. Supp. 2d 43, 59 (D.D.C. 2011) (holding

that the agency's supplemental submissions on the issue did not warrant reconsideration).

This case is distinguishable from *Cuban*.  The anonymous comments do not shed any

meaningful light on the Air Force's operations or involve an inquiry into the conduct of its

workforce.  Unlike the records concerning an inquiry into public corruption that were at issue in

*Cuban*, the Defense Organizational Climate Survey Reports are not part of an investigation of

misconduct or discipline.  And the comments themselves hardly shed light on what the

government is up to; these verbatim responses to survey questions were secured under a promise

of confidentiality to determine whether a particular military unit had any workplace or morale

issues that needed to be addressed.  Opp. at 14.  Even if the comments provided some insight

into what the government was doing, the employees' views are reflected in the remainder of the

report, which was produced in its entirety.  Specifically, the unit summaries at the beginning of

the report show the favorability ratings of the unit as compared to others of its type in the Air

Force and compared to the Air Force as a whole.  Pl.'s Decl. Ex. 4 at 6-8.  The report further

provides favorability ratings broken down into numerous demographics and it provides the

group's responses to a host of survey questions without revealing information provided by any

individual employee.  *Id.* at 9-25.  This information was released by Defendant because it shows

the survey results but does not invade any employee's privacy interests.

Plaintiff's attempt to liken the survey comments to a witness summary submitted as part

of the Commander Directed Investigation is unconvincing.  As noted above, Plaintiff does not

contest the fact that the survey commentors were promised that their responses would remain

confidential.  In contrast, statements submitted as part of a Commander Directed Investigation

are different because witnesses are not afforded the same guarantee of confidentiality.  Indeed,

the sample Witness Invitation Letter in the Commander Directed Investigation Guide contains no such language. CDI Guide Attachment 13.[10] And the accompanying form, signed by the witness, provides: "Information may be disclosed to local, county, state, and federal law enforcement /investigative authorities for investigation and possible criminal prosecution or civil court action. Information extracted from this form may be used in other related criminal and/or civil proceedings." ECF No. 14-7 at 11-12. For these reasons, Plaintiff's more limited redactions of the witness statement included in the Commander Directed Investigation were entirely appropriate. FOIA does not require Defendant to take the same approach regarding the survey comments by employees who were promised that such comments would remain confidential.

There can be no serious dispute that the Defense Department employees have a substantial privacy interest in the nondisclosure of the survey comments that they were promised would remain confidential. Plaintiff does not contest that point. On the other side of the scale, Plaintiff's reliance on the comments as exposing how the government investigates workplace matters is unpersuasive because the comments reflect the employees' personal views in their own writing and the unredacted portion of the reports is more than sufficient to provide the survey results and reveal to the public what the government is up to. Because disclosure of the employee comments would constitute a clearly unwarranted invasion of personal privacy, Defendants are entitled to summary judgment regarding these withholdings.

---

[10] The Commander Directed Investigation (CDI) Guide is available at https://www.af.mil/LinkClick.aspx?fileticket=tHPrwyT73OY=&portali (accessed Jan. 21, 2022).

**B.**    **Defendant Properly Relied on Exemption 3 and the Inspector General Act to Withhold in Full Documents That, If Disclosed in Redacted Form, Would Reveal the Identity of Complainants.**

Defendant withheld eight records in full pursuant to Exemption 3 and the Inspector General Act, 5 U.S.C. App'x 3 §§ 2, 7.  These documents included complaint forms and supporting materials submitted to the agency's Inspector General's Office by the complainant(s).  Def.'s Mem. at 10-14; Gonzalez Decl. ¶¶ 66-71.

Plaintiff does not dispute that the Inspector General Act qualifies as an Exemption 3 statute.  Opp. at 15 n.8.  However, she argues that only the complainants' names are exempt from disclosure and that the remaining information must be produced.  Opp. at 15-17.

Plaintiff unpersuasively tries to compare the complaints and supporting documents submitted to the Inspector General's Office to the 2018 Organizational Climate Survey Report and the witness statement submitted in connection with the Report of Investigation.  Opp. at 15 (citing Pl.'s Decl. Exs. 4-5).  As she did in the Exemption 6 context, Plaintiff suggests that Defendant might simply redact the author's names and produce the rest of the document.  This analysis is flawed for several reasons.

*First*, Defendant has committed to individuals who submit complaints to the Inspector General's Office that their identities will be protected, Gonzalez Decl. ¶¶ 69-70, just as it made a similar promise to the employees who provided their opinions as part of the climate survey.  The agency has asserted that, even if the complainants' personal data were redacted, the release of the remaining information on the initial complaint forms "would be tantamount to revealing their identity because of the specificity of the allegations" and that taking the same approach on the supporting materials "also would leave little or no doubt about the identity of a complainant or, at the very minimum, would enable individuals knowledgeable about the relevant work environment to easily discern a complainant's identity."  *Id.* ¶¶ 70-71.  Plaintiff does not explain

16

how Defendant could maintain its commitment maintain complainants' identities confidential if it were to disclose information that plainly would reveal their identity.  Plaintiff sidesteps these critical facts, incorrectly labeling them in her response to Defendant's statement of undisputed facts as "legal conclusions" that are "disputed."[11]

*Second*, Plaintiff's analysis rests on the erroneous premise that the Inspector General's Office investigated Plaintiff or the hostile work environment issues in her unit.  Opp. at 15-16. On this point, she again points to various sections of Air Force Instruction 90-301, titled "Inspector General Complaint Resolution.," and argues that those sections require the disclosure of "the great bulk of relevant information."  *Id.* at 16.  The fundamental flaw in this theory is that the Inspector General's Office did not investigate Plaintiff.  Supp. Gonzalez Decl. ¶ 13.  Rather, the unit commander directed the investigation.  *Id.*  As discussed above, commanders and Inspector General officials are to confer as to which investigation would be "more appropriate." Instruction 90-301 § 1.43.1.1.  Plaintiff has presented no evidence suggesting that the Inspector General's Office conducted a relevant investigation, and so the multiple provisions that she cites are inapposite to the withholding of the initial complaint documents and supporting information submitted by the complainants.  Just because a complaint was submitted to the Inspector General's Office, it does not follow that that office conducted and completed an investigation, and such an investigation did not happen here.

---

[11]    Plaintiff's responses to Defendant's Statement of Undisputed Material Facts included Ms. Gonzalez' statement concerning the consequences of releasing a redacted version of the materials withheld under Exemption 3.  Plaintiff sidestepped the issue by disputing the fact and alleging that Defendant asserted "a legal conclusion that is disputed."  ECF Nos. 12-3 ¶¶ 17-18; ECF No. 14-1 ¶¶ 17-18.  Because Plaintiff did not controvert Ms. Gonzalez' factual assertions with evidence, the Court may assume that the facts are admitted.  ECF No. 2 ¶ 10(c)-(d) (requiring the party opposing summary judgment to "include any information relevant to its response in its correspondingly numbered paragraph with specific citations to the record.").

*Third*, Plaintiff has failed to identify a single case that supports her position that an agency is required to limit its withholdings under Exemption 3 and the Inspector General Act to the complainant's name where there is undisputed evidence that the remaining portions of the document would reveal the identity of a complainant—whose identity the agency promised to protect from disclosure.  Plaintiff instead quotes ambiguous excerpts from the cases that Defendant cited only for the general proposition that the Inspector General Act is an Exemption 3 statute, Opp. at 17, a point that she does not contest.

Defendant is entitled to summary judgment with respect to its withholdings based on Exemption 3 and the Inspector General Act.

## CONCLUSION

For the reasons set forth above and in Defendant's opening brief, the Court should grant Defendant's Motion for Summary Judgment, deny Plaintiff's Cross-Motion for Summary Judgment, and enter judgment in favor of Defendant with respect to the claims in the Complaint.

Dated:  January 21, 2022

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

_____/s/ Paul Cirino_____
PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendant*

18