# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LORI C. GILBERT, | ) |
| Plaintiff, | ) |
| v. | ) C. A. No. 21-0318 (CJN) |
| UNITED STATES AIR FORCE, | ) |
| Defendant. | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S "OMNIBUS" DECLARATION

Pursuant to the Court's minute order of May 2, 2023, plaintiff Lori C. Gilbert respectfully submits her response to the declaration filed by defendant United States Air Force on May 31, 2023. [Omnibus] Declaration of Teresa S. Gonzalez ("Om. Gonz. Decl.") ECF No. 30-1.

## Background

The records at issue in this case were created within a confined workplace environment and in the midst of a conflict between two individuals. In December 2019, plaintiff, an Air Force Major, submitted a Freedom of Information Act ("FOIA") request to the agency seeking information about a formal investigation that resulted in a letter of reprimand to plaintiff. A Report of Investigation released to plaintiff described "email . . . outlining concerns with the [plaintiff's] leadership," specifically identifying it as "the email traffic from September 2018." That email set the investigation in motion. When the agency issued its final determination of plaintiff's FOIA request in December 2020, it represented that it was providing plaintiff with *all* responsive email, subject only to minor privacy redactions. The September 2018 email was not included in the material provided and the agency did not account for it. During the course of this litigation, defendant grudgingly acknowledged that it possessed the disputed email, and finally

released it to plaintiff (with minor privacy redactions) in April 2023. As set forth below, plaintiff submits that the agency's treatment of the September 2018 email shows that it did not conduct a good faith search for records responsive to plaintiff's request, and that its most recent declaration (which the agency describes as "omnibus") does nothing to alter that conclusion.

The record demonstrates that plaintiff has been aware, from the outset, that the September 2018 email was sent by her former colleague, Meredith Costey, who also submitted two complaints against plaintiff to the agency's Inspector General ("IG"). For that reason, the agency's reliance upon Exemption 3 and the Inspector General Act to withhold information is misplaced. The latest declaration does not even attempt to address the significance of the fact that plaintiff knows that Ms. Costey initiated the IG complaints.[1]

### The Agency's Search Was Not Conducted in Good Faith

Plaintiff's FOIA request, submitted in December 2019, sought, *inter alia*, all email (within a defined timeframe) concerning plaintiff sent by eight named individuals, including Ms. Costey, to the unit commander, Col. Michael Cote. According to the agency, "[i]nitially, the . . . eight individuals whose communications were requested conducted searches of their sent, inbox, and saved folders in the Outlook email platform for records with Plaintiff's name." Memorandum in Support of Defendant's Motion for Summary Judgment ("Def. Mem."), ECF No. 12-1, at 8. According to the agency's declarant, Teresa S. Gonzalez, "Ms. Costey reported that she conducted a thorough search of her sent, inbox, and saved folders in Outlook . . ." Om. Gonz. Decl., ECF No. 30-1, ¶ 34. "As a result of [its] searches, Defendant released to Plaintiff

---

[1] When plaintiff earlier in the case noted her knowledge of the fact that Ms. Costey had sent the September 2018 email, the agency asserted it was "not relevant" and "has no bearing on the FOIA issues before the Court." Defendant's Response to Plaintiff's Statement of Material Facts (ECF No. 15-2) at 1.

responsive records with redactions based on FOIA Exemption 6." Def. Mem. at 9 (citation omitted). The agency's determination letter stated that 1,807 pages of material had been reviewed and that all of those pages were being released with redactions. Exhibit 5, Declaration of Teresa S. Gonzalez ("1st Gonz. Decl.") ECF No. 12-2. The letter did not mention Exemption 3 or the Inspector General Act, or reference any material withheld in its entirety. *See also* Om. Gonz. Decl., ¶18 (the agency "determined that FOIA Exemptions 5 and 6 applied and a partial release of all [responsive material] was provided to Plaintiff").

At this point, the story gets a bit murky, because it is difficult to follow a clear timeline in the various declarations Ms. Gonzalez has submitted. Eventually, after plaintiff pushed the issue, the agency acknowledged the existence of the September 2018 email. In her latest declaration, Ms. Gonzalez states:

> The "Final Release Memorandum" dated December 8, 2020, referencing the responsive records were considered under Exemption 5 and 6 and did not consider Exemption 3. At the time of the search in 2019, the ESI [Electronically Stored Information] Request method was not an approved FOIA process for searching emails. Accordingly, *the original search for responsive records/emails were conducted by the individuals identified in the FOIA request*. The ESI process of searching Outlook accounts was not used until May 2021 when a "second" search request by the plaintiff was requested. At that time, *it was discovered that some responsive emails were collected from two locations, the individual Outlook file and the IG files*. Those emails were initially withheld under the Inspector General Act of 1978 in both instances.
> . . .
>
> However, based on subsequent guidance that I received, on April 5, 2023, an additional 33 pages of Outlook data files [] were released to Ms. Gilbert with the FOIA Exemption (b)(6) redactions applied and duplicate pages removed.

*Id.*, ¶¶80, 85 (emphasis added).

All of which raises an obvious question: why was the September 2018 email, which led to a formal investigation of plaintiff (and was specifically identified in the investigative report) not located until an electronic search was conducted, as a result of this litigation, in May 2021?

3

The answer is contained in an earlier declaration submitted by Ms. Gonzalez but is absent from her new "omnibus" declaration. Recall that "the original search for responsive records/emails were [sic] conducted by the individuals identified in the FOIA request." In her declaration filed in October 2022, Ms. Gonzalez stated:

> The email account that the emails were in was considered protected under the "Protected Communications" category. This category includes any communication between supervisor and employee. "Protected Communications" can only be released with the consent of the individual. The owner/individual of these emails [*i.e.*, Ms. Costey] was very clear *when they contacted me when the FOIA Case first started that no "Protected Communications" documents were to be released*.

Second Supplemental Declaration of Teresa S. Gonzalez ("2d Supp. Gonzalez Decl.") (ECF No. 19-1) ¶13 (emphasis added). While it is not clear whether, "when the FOIA Case first started," Ms. Costey failed to provide her email to Ms. Gonzalez or if Ms. Gonzalez received the material and failed to acknowledge its existence in the agency's response to plaintiff, the facts raise grave concerns about the integrity of the agency's handling of plaintiff's FOIA request. Responsive records were willfully concealed.

"[T]he agency must show that it made a *good faith effort* to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (emphasis added), *quoting Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990); *see also Montgomery v. Internal Revenue Service*, 40 F.4th 702, 715 (D.C. Cir. 2022). The D.C. Circuit "applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) (citations omitted). Under the facts set forth above, the agency cannot show that it made "a good faith

effort to conduct a search for the requested records," nor can its search pass muster under a "reasonableness" test. The agency left its search to the discretion of individual email custodians, at least one of whom resisted compliance with the law's requirements in an apparent effort to conceal her own involvement in events leading to the formal investigation of plaintiff. The agency official who coordinated the search appears to have acquiesced in the concealment. It is clear that, absent plaintiff's persistence, the agency would never have acknowledged the email located in Ms. Costey's Outlook account.

While the courts recognize that "[m]istakes alone do not imply bad faith," *Leopold v. Dep't of Justice*, 130 F. Supp. 3d 32, 42 (D.D.C. 2015), "what is expected of a law-abiding agency is that it admit and correct error when error is revealed." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986). As this Court has explained, "an agency's declarations will almost always remain entitled to a presumption of good faith *so long as the agency acknowledges error and corrects for it . . . .*" *American Oversight v. U.S. Dep't of Justice*, 401 F. Supp. 3d 16, 28 (D.D.C. 2019) (emphasis added). Here, despite numerous opportunities, the agency has failed to explain why the September 2018 email – which clearly originated in and resided in Ms. Costey's Outlook account – was not identified and accounted for in December 2019 when "Ms. Costey reported that she conducted a thorough search of her sent, inbox, and saved folders in Outlook." Om. Gonz. Decl., ECF No. 30-1, ¶ 34. The agency has also not explained why it required plaintiff's repeated prodding during two years of litigation to acknowledge – and finally release – material that has always been central to the parties' dispute. The agency did not conduct a "good faith search," *Valencia-Lucena*, 180 F.3d at 326, and it has not met its obligation to "admit and correct error when error is revealed." *Meeropol*, 790 F.2d at 953.

## **The Agency's Reliance Upon the Inspector General Act Cannot be Sustained**

Plaintiff has been aware, from the outset, that the September 2018 email was sent by her former colleague, Meredith Costey, who also submitted two complaints against plaintiff to the agency's Inspector General ("IG"). In a meeting on January 28, 2019, Ms. Costey told plaintiff that she had collected comments about plaintiff from other members of their unit on "behalf of Colonel Cote and forwarded those comments to him by email." Declaration of Major Lori C. Gilbert ("Gilbert Decl.") (ECF No. 14-2), ¶5.[2] The record contains several references to that meeting. In a witness statement contained in the agency's Report of Investigation ("ROI") and released to plaintiff, the meeting is described as follows:

> <u>28 Jan 19</u> -> Maj Gilbert stopped by my office to discuss the "3 Rs" and the tension between us. During that conversation, Maj Gilbert stated that she had heard that someone submitted an e-mail to [redacted] a few months back and they were trying to get her "fired." I told her that back in the fall I sent [redacted] an e-mail identifying the "Unhealthy Working Environment", but I did not try to get her fired. I was letting my supervisor, my commander, know what was going on in the 625 ACOMS. It was up to [redacted] how he wanted to handle the information.
>
> Following my admitting I sent [redacted] an e-mail, Maj Gilbert started talking about my reputation and how I have a history of being "racially motivated."

Gilbert Decl., Ex. 5 (ECF 14-7) at 8.[3]

---

[2] Plaintiff stated in her declaration:

> I have reviewed the email records released to me by the Air Force in response to my FOIA request. None of the released email reflects comments about me that members of my unit provided to Ms. Costey and/or Colonel Cote. It is clear to me that, thus far in this litigation, the Air Force has not accounted for the email traffic revealed to me by Ms. Costey and specifically identified in the [Report of Investigation].

*Id.*, ¶7.

[3] The January 28 meeting is also discussed in the "Background and Timeline" section of the ROI. Gilbert Decl., Ex. 3 (ECF No. 14-5).

While the agency redacted names in all of the witness statements contained in the ROI, the author of the quoted statement clearly was Ms. Costey. As the statement demonstrates, Ms. Costey's IG complaints grew out of the dispute over the September 2018 email:

> <u>11 Feb 19</u> ->. I met with [redacted] 25 AF/IG, discussed options and I decided to submit two formal complaints against Maj Lori Gilbert, 625 ACOMS/DO:
>
> 1. 25AF/IG – Creating and fostering a Hostile/Unhealthy/Toxic Work Environment (AFI 1-2)
> 2. DoD/IG – Reprisal in the form of two false allegations . . . based on admitting I had sent Protected Communication (e-mail) to my Commander in Fall 2018 identifying my concerns regarding to Unhealthy Work Environment.

*Id*. The story – well-known to plaintiff – is re-told in documents the agency's IG released to plaintiff in February 2022.[4] According to the IG complaint intake report:

> On September 21, 2018, the Complainant e-mailed [redacted] and reported that [redacted] believed Maj Gilbert was "quickly creating a seriously unhealthy work environment" and that the issue needed to be addressed before it became "toxic."
> . . .
>
> The Complainant told us that during a discussion with Maj Gilbert on January 28, 2019, Maj Gilbert accused [redacted] of having a history of being "racially motivated." The Complainant explained that during [redacted] discussion with Maj Gilbert, [redacted] (the Complainant) admitted to sending an e-mail to [redacted] on September 21, 2018, detailing [redacted] and other unit members' concerns that Maj Gilbert's actions were creating a "very unhealthy working environment."

Exhibit A (filed herewith).[5]

---

[4] During the course of this litigation, and after the agency insisted upon a very narrow reading of the scope of plaintiff's 2019 FOIA request with respect to IG material, plaintiff submitted a request directly to the IG in November 2021. The IG released records, filed herewith, containing only minor redactions.

[5] As discussed *infra*, there does not appear to be consistent application of the purported requirements of the Inspector General Act within the Defense Department with respect to the scope of complainant confidentiality.

Defendant seeks to withhold all IG-related material in its entirety, invoking the Inspector General Act, 5 U.S.C. App'x 3 § 7(b), which provides that "[t]he Inspector General shall not, after receipt of a complaint or information from an employee, disclose the identity of the employee without the consent of the employee, unless the Inspector General determines such disclosure is unavoidable during the investigation." In reality, however, nothing the agency could release to plaintiff would "disclose the identity" of the complainant because plaintiff knows that Ms. Costey filed the IG complaints, and the record establishes that fact.

While plaintiff is not aware of authority interpreting the meaning of "disclose" under the Inspector General Act, it has been addressed in the very similar context of whistleblower protection. Noting the dictionary definition of "disclose" as "to make known; reveal or uncover: to disclose a secret," the Federal Circuit, in its jurisprudence under the Whistleblower Protection Act of 1989 ("WPA"), Pub.L. No. 101-12, 103 Stat. 16, holds that the term "disclosure" means "to reveal something that was hidden and not known." *Huffman v. OPM*, 263 F.3d 1341, 1349–50 (Fed. Cir. 2001); *see also Francisco v. OPM*, 295 F.3d 1310, 1314 (Fed. Cir. 2002).[6]

Applying the "ordinarily understood meaning" of "disclose," it is simply a matter of common sense that it does not include revealing the identity of an individual whose identity is already known. In *Roviaro v. United States*, the Supreme Court addressed the scope of the informer's privilege, which the Court described as "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Noting that "[t]he privilege recognizes the obligation of

---

[6] The court in *Huffman* noted: "The WPA by its terms requires that the employee have made a 'disclosure' to trigger the protection of the Act. While that term is not explicitly defined in the statute, it is a basic principle of statutory interpretation that undefined terms in a statute are deemed to have their ordinarily understood meaning. For that meaning, it is appropriate to consult dictionaries." 263 F.3d at 1349.

8

citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation," the Court held that "[t]he scope of the privilege is limited by its underlying purpose" and that "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." 353 U.S. 53, 59–60 (1957) (footnote and citations omitted). *See also id*. at 60, n.8 ("the purpose of the privilege is to maintain the Government's channels of communication by shielding the identity of an informer from those who would have cause to resent his conduct."). *See also Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 768 (D.C. Cir. 1965) ("once the identity is revealed, the privilege terminates").

At this point, the commonsense conclusion that an identity already known cannot be "disclosed" meets up with the futility of what the agency claims to be its objective. The record shows that, as Ms. Costey says in describing her January 28 meeting with plaintiff, there was "tension" between the two. She told plaintiff she had sent derogatory information about plaintiff to their commander. She "decided to submit two formal [IG] complaints against Maj Lori Gilbert." Gilbert Decl., Ex. 5 (ECF 14-7) at 8. In her most recent declaration, Ms. Gonzalez recognizes the futility of attempting to conceal identities in a small workplace:

> the supporting materials that were provided by a complainant . . . would leave little or no doubt about the identity of a complainant or, at the very minimum, would enable individuals knowledgeable about the relevant work environment to easily discern a complainant's identity.

Om. Gonz. Decl. ¶77. While offered in support of the agency's attempt to continue withholding 110 pages of responsive records in their entirety, *id*.,¶73, the statement recognizes that it is

virtually impossible to conceal the identities of co-workers in "the relevant work environment," especially under the circumstances present in this case.[7]

To summarize, Ms. Costey's identity as the IG complainant is known as a result of 1) Ms. Costey's statements to plaintiff; 2) the witness testimony contained in the agency's Report of Investigation; 3) the agency's belated disclosure of the September 2018 email in April 2023 and its earlier efforts to conceal it; and 4) the material the IG released to plaintiff. With respect to the latter, *see* Exhibit A (filed herewith), plaintiff cannot account for the different approaches taken by the agency's Inspector General in responding to plaintiff's December 2019 FOIA request and her November 2021 request. But in addition to further confirming that Ms. Costey was the complainant, the material disclosed in response to the latter request (released with redactions, rather than withheld in full) shows that the agency's invocation of the IG Act is inconsistent and arbitrary. The 110 pages of responsive material withheld under Exemption 3 and the IG Act must be released in their entirety.[8]

## Conclusion

For the foregoing reasons, and those previously presented to the Court, defendant should be ordered 1) to disclose immediately all material withheld under the Inspector General Act, in its entirety; 2) to disclose immediately the "anonymous comments" submitted in the October 12,

---

[7] The "omnibus" declaration does not address the actual facts of this case, discussing only a hypothetical situation in which the identity of a complainant is unknown.

[8] In her briefing earlier in this case, plaintiff said she "does not challenge the redaction of 'the identity of the employee,' but she does contest the withholding of the responsive material in its entirety." Reply Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment (ECF No. 17) at 15. In light of the foregoing discussion of subsequent developments in the litigation, plaintiff now does challenge the redaction of the name of the complainant.

2018 and November 28, 2019 DEOCS Reports;[9] and to conduct a good faith search for all records responsive to plaintiff's FOIA request.

Respectfully submitted,

 /s/ David L. Sobel
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W., Suite 640
Washington, DC 20015
(202) 246-6180

*Counsel for Plaintiff*

---

[9] Plaintiff relies upon the arguments she previously presented with respect to the agency's withholding of the "anonymous comments." *See* ECF No. 14 at 13-15; ECF No. 17 at 10-14.