UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LORI C. GILBERT, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 21-0318 (CJN) |
| UNITED STATES AIR FORCE, | ) ) ) | |
| Defendant. | ) ) ) | |

### SUPPLEMENTAL BRIEF IN SUPPORT OF OMNIBUS DECLARATION

Pursuant to this Court's Minute Order of February 19, 2024, Defendant United States Air Force, by and through undersigned counsel, hereby submits a supplemental brief in support of its Omnibus Declaration ("Omnibus Decl.," ECF No. 30-1) in support of its previously briefed Motion for Summary Judgment (ECF No. 12). This Court ordered Defendant to address and respond to Plaintiff's objections and arguments made in response to the Omnibus Declaration. Response, ECF No. 32. Because both of Plaintiff's objections are misleading and inapposite, Defendant urges this Court to grant summary judgment in its favor.

### BACKGROUND

At core, the records at issue in this matter arise from Plaintiff's Freedom of Information Act ("FOIA") request to the Air Force, seeking information about a formal investigation that resulted in Plaintiff receiving a letter of reprimand. That investigation, in turn, allegedly resulted from two complaints made against Plaintiff by a former colleague, who separately sent an email in September 2018 that alerted Plaintiff to these complaints.

That September 2018 email, along with other communications made to the Air Force Inspector General's Office as part of those complaints, initially was withheld under Exemption 3.

Omnibus Decl. ¶ 80. Subsequently, Defendant reevaluated its position and determined that only those emails and documents collected from the Inspector General's Office's files were subject to withholding under Exemption 3; documents collected from other sources, including from other custodians' Outlook folders, were not so subject even when duplicative of records within the Inspector General's Office's files. Omnibus Decl. ¶¶ 80-85. Accordingly, additional records were released. Omnibus Decl. ¶ 85.

After initially filing a Motion for Summary Judgment (ECF No. 12), the parties in this case engaged in multiple rounds of further negotiations, refining search terms, reassessing the applicability of various FOIA Exemptions, and producing—and reproducing—hundreds of pages of records. *See, e.g.*, Jt. Status Rep. of May 10, 2023 (ECF No. 29); Status Conference, Apr. 25, 2023; Def.'s Status Rep. of Mar. 20, 2023 (ECF No. 27).

This Court then ordered Defendant to submit a final Omnibus Declaration, without additional briefing, to support the adequacy of the search and the applicability of the exemptions applied in this matter. Minute Order of May 2, 2023. After Defendant filed the Omnibus Declaration (ECF No. 30-1), Plaintiff filed a Response (ECF No. 32). Defendant now addresses the arguments in the Response.

## ARGUMENT

In the Response, Plaintiff raises two objections to Defendant's response to the FOIA request and production of records. First, Plaintiff argues that the search was not conducted in good faith. Response at 2-5. Second, Plaintiff argues that Defendant's reliance upon the Inspector General Act, 5 U.S.C. App'x 3 § 7(b) (the "Inspector General Act"), is misplaced and does not support the application of Exemption 3 to the withholdings in this case. Both of these objections are misleading and inapposite, and this Court should grant summary judgment.

I.      **The Search Was Adequate and Conducted in Good Faith**

Plaintiff argues (Resp. at 2-3) that Defendant's initial search for records in response to the FOIA Request was inadequate when it was conducted in 2020. Plaintiff appears to base this on the fact that the September 2018 email was not produced in the initial response to the FOIA Request, and on the fact that the initial email searches were conducted by the custodians themselves. This argument is a red herring.

The issue before this Court is not whether the initial search and processing of records in 2020 was adequate; rather, the issue is whether the final production of records, as it stands after multiple rounds of negotiations and supplemental productions, is sufficient. Plaintiff asks this Court to impute ill-intent to Defendant merely because the parties engaged in further discussions after the initial production, but this is exactly the normal process by which parties are expected to resolve issues. Plaintiff does not offer this Court any basis from which to conclude that the final state of the productions and searches is either inadequate or in bad faith. To the contrary, the agency's openness to further searches informed by discussions with Plaintiff is evidence of the agency's good faith.

Plaintiff notes (Resp. at 3) that the September 2018 email was not part of the initial production. But Plaintiff admits that the September 2018 email was subsequently produced by Defendant. And as the Omnibus Declaration makes clear, the September 2018 email was initially located but was withheld based on the Defendant's application of the Inspector General Act at that time, and it was identified as such in the contemporaneous Vaughn Index. Omnibus Decl. ¶ 87. Those records "were not newly discovered nor the result of any new searches; rather, they were produced after the Air Force reevaluated the applicability of Exemption (b)(3) to documents which are duplicative of—but not sourced from—the [Inspector General's] files." Omnibus Decl. ¶ 87. Plaintiff attempts to use Defendant's change in position on how the

Inspector General Act applied to impute ill-intent to the search itself, but the simple fact is that the September 2018 email on which her argument hangs has since been produced.

Plaintiff also takes issue (Resp. at 4) with the fact that the initial search of records in 2020 was done by the email custodians themselves, rather than a centralized search of the electronic records. This, too, is a red herring. Leaving aside the fact that Defendant has since conducted such an electronic search of the custodians' Outlook accounts (Omnibus Decl. ¶¶ 46-48), Defendant has also explained that, at the time of the initial search, such a centralized electronic search was not an approved process under Air Force policy. Omnibus Decl. ¶ 80. Plaintiff may well wish that Defendant had taken a different approach to the email search at first, but that does not by itself render the initial search either inadequate or in bad faith, as Plaintiff insists. And even if that initial search was inadequate, any inadequacy has been cured by the fact that Defendant has since conduced a "second" search of the Outlook files. Omnibus Decl. ¶¶ 46-49.

Defendant's search for and production of records—as evaluated in its entirety, and accounting for Defendant's conducting additional searches and re-reviewing records—was both adequate under FOIA and was performed in good faith. Nothing in Plaintiff's Response addresses the current state of affairs before this Court, only the initial search four years ago. This Court should ignore Plaintiff's insistence that any putative faults in that initial search have somehow persisted, and grant summary judgment to Defendant.

## II. Defendant's Withholdings Under Exemption 3 Are Appropriate

Plaintiff takes issue (Resp. at 6-10) with Defendant's withholdings under Exemption 3, which is in turn based upon the Inspector General Act. Plaintiff's objection appears to be based on the fact that she "knows" the source of the complaints against her. Resp. at 7-8. Because Plaintiff believes she knows the source of the complaints, she argues that Defendant cannot rely on the Inspector General Act to withhold information. Plaintiff is wrong.

Exemption 3 permits an agency to withhold records "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). If the statute in question either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld," then Exemption 3 applies. *Id*. In this case, Defendant relies upon the Inspector General Act, which provides that "[t]he Inspector General shall not, after receipt of a complaint or information from an employee, disclose the identity of the employee without the consent of the employee, unless the Inspector General determines such disclosure is unavoidable during the investigation." 5 U.S.C. App'x 3 § 7(b). The Inspector General Act has been found to be the "type of non-discretionary statutory language that Exemption 3 contemplates." *Wash. Post Co. v. Special Inspector Gen. for Afghan. Reconstruction*, 486 F. Supp. 3d 141, 166 (D.D.C. 2020) (citing *Braun v. U.S. Postal Serv.*, 317 F. Supp. 3d 540, 548 (D.D.C. 2018)).

Plaintiff attempts to argue that, because she believes she knows the identity of the employee who complained, there can be no improper disclosure in releasing the records withheld under Exemption 3. Resp. at 8. This misses the point of both the Inspector General Act and Exemption 3 entirely. Plaintiff may be quite sure that she knows the identity of the complainant, but that is not what the non-discretionary language in the Inspector General Act addresses. Instead, the Inspector General Act bars any disclosure of the identity of the employee without that employee's consent. 5 U.S.C. App'x 3 § 7(b). Plaintiff's guesswork based on her own personal experience is wholly different than a formal identification of the complainant through the release of Air Force Inspector General documentation.

In any event, caselaw interpreting Exemption 3 makes clear that this Court need not even engage in such tortured readings of the word "disclose." "Exemption 3 differs from other FOIA

exemptions in that its applicability depends less on the detailed factual contents of specific documents[.]" *Ass'n of Ret. RR Workers, Inc. v. United States RR Ret. Bd.*, 830 F.2d 331, 335 (D.C. Cir. 1987). Instead, the only requirement is that the agency show "the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson v. Dep't of State*, 565 F.3d 857, 866 (D.C. Cir. 2009) (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990)). Plaintiff's insistence that the particular disclosure in this case would be fine because she already knows the information is therefore irrelevant and misses the point of Exemption 3. *See, e.g.*, *Ass'n of Ret. RR Workers*, 830 F.2d at 335 (rejecting argument that Court "must go further and evaluate whether the specific disclosure requested would violate the purpose of the statute"); *Aronson v. IRS*, 973 F.2d 962, 967 (1st Cir. 1992) (judicial review ends "once a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute"). Plaintiff's arguments (Resp. at 8-9) relating to the purpose of the Inspector General Act are thus inapposite. The Inspector General Act is an Exemption 3 statute, and the records here would identify the complainant. Defendant was therefore correct to apply Exemption 3 withholdings to those records.

      To the extent Plaintiff instead means to invoke the public domain doctrine to argue that Defendant has waived its ability to withhold the information because Plaintiff believes she somehow knows certain information, this attempt wholly fails: Plaintiff has not borne her burden to establish that the agency has officially acknowledged the withheld information. To overcome a withholding under this narrow exception, the public information must be (1) "as specific as the information previously released," (2) must "match the information previously disclosed," and (3) must have "already . . . been made public through an official and documented

disclosure." *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999).  These requirements ensure that the "information sought is truly public and that the requester receive[s] no more than what is publicly available." *Id.*  The specific information must have already been "disclosed and preserved in a permanent public record." *Id.* at 554.  Plaintiff bears the burden of demonstrating that the withheld information is publicly available. *See, e.g.*, *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 60 (D.C. Cir. 2003) (holding that plaintiff must show that previous disclosure duplicates specificity of withheld material); *Davis v. Dep't of Just.*, 968 F.2d 1276, 1280 (D.C. Cir. 1992) (plaintiff has burden of showing "permanent public record of the exact portions" to establish waiver).

      Here, Plaintiff simply asserts knowledge of the individual's identity.  But she has not satisfied any of the three *Cottone* criteria, such as by showing that Defendant has publicly acknowledged this person's identity.  She has not shown that the information in the public domain matches the withheld information as she is required to do.  *Cf. Buzzfeed, Inc. v. Dep't of Just.*, 344 F. Supp. 3d 396, 408 (D.D.C. 2018).  Plaintiff offers no "evidence" that shows that this exact withheld information has previously been confirmed or denied or publicly released.  *See Jud. Watch, Inc. v. Dep't of Def.*, 963 F. Supp. 2d 6, 13 (D.D.C. 2013) (agency had not waived ability to withhold names because, while plaintiff "claims that the five redacted names at issue here are in the public domain, [plaintiff] has not 'point[ed] to specific information . . . that duplicates that being withheld,' much less a 'permanent public record' in which those names have been 'disclosed and preserved'"); *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1995) ("plaintiffs cannot simply show that similar information has been released, but must establish that a specific fact already has been placed in the public domain"); *ACLU v. CIA*, 109 F. Supp. 3d 220, 241 (D.D.C. 2015) (rejecting plaintiff's waiver argument because

"[plaintiff] has merely pointed to alleged disclosures of vaguely similar information, but has failed to identify officially disclosed information that 'precisely track[s]' or 'duplicates' the information it has requested"), *aff'd*, 640 F. App'x at 12 (holding that plaintiff failed to point to information that duplicates or matches that being withheld).

It is settled law that when the information that is available to the public is less specific than the requested information, the agency may properly protect the more detailed information. *Assassination Archives*, 334 F.3d at 60-61 (holding that defendant did not waive ability to withhold certain documents, because plaintiff "made no specific showing that any of the . . . disclosures revealed information that is 'as specific as' and 'match[es]' that included in the [withheld material]"). Here, Defendant acted properly in withholding the information, as Plaintiff's assertion that she knows the person's identity is a far cry from the requisite official acknowledgment necessary for a waiver of the right to withhold the information.

*   *   *

**CONCLUSION**

For the foregoing reasons, the arguments already made in Defendant's prior briefing and in hearings before this Court, and the explanations set forth in the Omnibus Declaration, this Court should grant summary judgment to Defendant.

Dated: March 22, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar No. #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   /s/ Stephen DeGenaro
STEPHEN DEGENARO
D.C. Bar No. 1047116
KARTIK N. VENGUSWAMY
D.C. Bar No. #983326
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 252-7229 (DeGenaro)
Tel: (202) 252-1790 (Venguswamy)
stephen.degenaro@usdoj.gov
kartik.venguswamy@usdoj.gov

*Attorneys for the United States of America*