## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LORI GILBERT,<br><br>     *Plaintiff*<br><br>     v.<br><br>UNITED STATES AIR FORCE,<br><br><br>     *Defendant*. | Civil Action No. 1: 21-cv-00318 (CJN) |

## <u>MEMORANDUM OPINION</u>

Major Lori Gilbert submitted a FOIA request to the United States Air Force seeking various records relating to an investigation regarding her command of a unit at Joint Base San Antonio-Lackland. Following various rounds of productions and motions practice, two issues remain: Whether the Air Force conducted its search for responsive documents in good faith, and whether the Air Force properly withheld documents in reliance on the Inspector General Act, 5 U.S.C. App'x 3 § 7(b). For the reasons that follow, the Court concludes that the Air Force's search was adequate and that its withholdings are proper—and accordingly grants Defendant's Motion for Summary Judgment while denying Plaintiff's.

### I.    Background

Lori Gilbert holds the rank of Major in the United States Air Force, a role in which she has served on active duty since 2006. ECF 14 at 1. On July 16, 2018, she became the Director of Operation for the 625th Air Communications Squadron at Joint Base San Antonio-Lackland in Texas. *Id.* In October of that year, the Squadron released a "Unit Climate Assessment," which revealed a "pattern of dissatisfaction among some unit personnel with" Gilbert. ECF 12-1 at 2. According to Gilbert, she learned that Meredith Costey, a civilian employee who served as a flight director, had

solicited members of the unit for comments regarding Gilbert's leadership.  ECF 13-2 at 2.  Gilbert also attests that she was told by Costey in January 2019 that, acting on behalf of Gibert's superior Colonel Micheal Cote, Costey had collected comments about Gilbert from other members of the unit and had forwarded those comments to Cote by email.  *Id.*  Two months later, an investigating officer notified Gilbert that she was the subject of a Commander Directed Investigation into her role in the dissatisfaction.  ECF 13 at 1.

An investigation report followed, alleging that "several personnel [had] approached the ACOMS Commander… in person and via email over the course of months, outlining concerns with [Gilbert's] leadership."  ECF 13-5 at 2.  The report also alluded to deeper tensions—namely, Gilbert's allegations that criticisms of her leadership style were brought "solely on racial grounds."  *Id.*  That investigation report ultimately resulted in a Letter of Reprimand against Gilbert, a two-year Unfavorable Information File, a negative Officer Performance Report, and a black mark on her Officer Selection Record.  ECF 14 at 1–2.  Gilbert claims that the effects of these repercussions are permanent and detrimental.  *Id.*

Gilbert wanted more information on what had led to such an indicting report.  She therefore submitted a FOIA request to the Air Force seeking, among other things:  the appointment and tasking letter from Cote that had instigated the investigation; the background statement leading to the investigation; the complete report of the investigation, including all exhibits, attachments, and notes of witness interviews; any/all historical information on Gilbert's squadron; "Inspector General recommendations" concerning the investigation; the "EO recommendation concerning the investigation"; and all emails/correspondences to and from various persons—including Meredith Costey and Colonel Cote—from July 2018 through December 2019.  *Id.* at 2–3; ECF 30-3 at 1–2.

Two days after it received her FOIA request, the Air Force contacted Gilbert and asked her to amend part 16—that is, the part seeking all pertinent communications from Colonel Cote during

the relevant timeframe.  ECF 30-5 at 1.  Gilbert declined to do so.  *Id*.  Two days later, the Air Force sent Gilbert a final response letter containing 1,808 pages of responsive documents, but it also withheld certain records on three grounds:  (1) that the Inspector General Act, 5 U.S.C. App'x 3 § 7(b) (via 5 U.S.C. §552(b)(3)) protected certain complaints brought against Gilbert; (2) that an internal legal review of the investigation was protected  under §552(b)(5) as intra-agency legal work product; and (3) that employees' names, duty titles, phone numbers, email addresses and contact information in certain documents were protected under §552(b)(6) as personnel files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

Gilbert appealed those withholdings—and further alleged that the agency had not conducted an adequate search.  *Id.*  When the Air Force delayed in resolving that internal appeal, Gilbert filed this action (and the Air Force terminated the appeal).   *Id.* at 4; ECF 30-1 at 8.  For the next several months here the Air Force made additional productions while the parties submitted joint status reports.  *See* ECF 27, 28, 29.  Some of those additional productions came even after the parties had filed summary judgment briefs, as a result of which the Court ordered the Air Force to file a final *Vaughn* index and supporting declaration to make clear what issues remained in dispute.  ECF 30-1.

As noted above, two issues remain live:  Whether the Air Force conducted its search for relevant documents in good faith, and whether the Air Force properly relied on the Inspector General Act as the basis for its §552(b)(3) withholdings.  ECF 32 at 2, 6.

## II.    Analysis

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In the FOIA context, summary judgment may be granted on the basis of agency affidavits if they contain

reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (internal alteration and quotation marks omitted).

## A.    Adequacy of Search

As noted above, Gilbert contends that the Air Force's search for responsive records was conducted in bad faith, and therefore was inadequate.  The crux of this contention is a September 2018 email that Gilbert believes was sent from Costey to Cote (the sender's name and email address is redacted in the eversion produced to Gilbert).  It is undisputed that the Air Force did not produce this email in its initial production, but did produce it later after conducting additional searches.  Gilbert asks a reasonable question:  "Why was the September 2018 email, which led to a formal investigation of plaintiff… not located until an electronic search was conducted, as a result of this litigation, in May 2021?"  ECF 32 at 4.  The Air Force's answer is that the "email account that the [September 18] email[] w[as] considered protected under the 'Protected Communications'" category.  "This category includes any communication between supervisor and employee."  ECF 19-1 at 3.

Gilbert argues that this position suggests a bad faith investigation; she claims that, because the September 18 email was so central to her request, the Air Force could have withheld it from the initial production only out of malice.  The Air Force's original position as to this document appears to have been that it was covered by FOIA exemption (b)(3) as a communication between supervisor and employee.  Whatever the merits of that position, the Air Force later changed it, and ultimately produced the document in redacted form.

The Air Force's initial position does not appear to be so outlandish that it can only be explained by malice.  But in any event, it's unclear why that should matter much now.  After all, the Air Force produced the document to Gilbert long ago (subject to the redactions discussed below).   Perhaps as

important, even if Gilbert were right that the Air Force acted in bad faith in withholding a document it had located in its early search efforts, she has failed to demonstrate how that decision also reflects bad faith in how the Air Force conducted its searches for responsive records. Put differently, Gilbert fails to link the Air Force's alleged bad faith in not producing one document it did locate to a claimed deficiency in its efforts to locate other responsive records.

To be sure, Gilbert does contest how the Air Force conducted its search—in particular, she challenges how the initial search of email records in 2020 was done by the email custodians themselves, rather than through a centralized search of the electronic records. ECF 32 at 4. But since its original search and production, the Air Force has conducted a full electronic search of the custodians' email accounts. ECF 30-1 at 15–16. And it has explained why such a search wasn't feasible the first time: The "Electronically Stored Information" process used during the later search was "not an approved FOIA process for searching emails" in 2020. *Id.* at 26. In the Court's view, the custodian-dependent searches followed up by the ESI process was adequate here.

**B.    The Inspector General Act**

The second remaining dispute is whether the Air Force has appropriately relied on the Inspector General Act in withholding information that might disclose the identity of the complainant in the September 18 email. Gilbert does not dispute that the Act might apply in appropriate circumstances as a qualifying statute under FOIA exemption 3; instead, she argues, it cannot apply here because she claims to already know the identity of the complainant: Meredith Costey. ECF 32 at 6.

To be sure, Gilbert has some information to suggest that Costey was the complainant. But is that enough? In *Cottone v. Reno*. 193 F.3d 550 (D.C. Cir. 1999), the Court of Appeals laid out a three-part test for determining whether non-public information has been confirmed through public disclosures. Under that test, the non-public information must be "as specific as the information

previously released," *id.* at 555; the non-public information must "match the information previously disclosed," *id.*; and the non-public information must have "already . . . been made public through an official and documented disclosure," *id.*  These requirements ensure that the "information sought is truly public and that the requester receive[s] no more than what is publicly available."  *Id.*

The problem for Gilbert is that she does not make a serious effort to satisfy the last part of this test.  In particular, Gilbert fails to establish that the Air Force has ever made public, "through an official and documented disclosure," the identity of the complainant—let alone that it was Costey.  And the record does not otherwise demonstrate that the Air Force has confirmed the identify as required by *Cottone*.  Accordingly, while Gilbert surely believes (and has reason to believe) that the September 18 email was sent by Costey, that is not enough to demonstrate that the identity of the complainant has been disclosed.  As a result, the Air Force properly withheld this information under exemption 3.

### III.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF 12, is GRANTED and Plaintiff's Cross-Motion for Summary Judgment, ECF 14, is DENIED.  A separate order will accompany this opinion.

DATE:  August 14, 2025

_____
J. NICHOLS
United States District Judge